# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNNE SWISHER, | : | CIVIL NO: 4:13-CV-00166 |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| COLUMBIA COUNTY, *et al.*, | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Introduction.**

In this employment-discrimination case, the plaintiff, Lynne Swisher, claims that she was subject to a hostile working environment and that her employment was terminated after she complained of the harassment against her. She presents claims under 42 U.S.C. § 1983 and the Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 951, *et seq.* We recommend that the defendants' motion to dismiss the amended complaint be granted because the § 1983 claims are barred by the statute of limitations and, once those claims are dismissed, the court should decline to exercise supplemental jurisdiction over the PHRA claims.

## II. Background and Procedural History.

Swisher began this action by filing a complaint on January 23, 2013. She later filed an amended complaint naming the following defendants: (1) Columbia County; (2) the Columbia County Prison; (3) Columbia County Commissioners; (4) the Columbia County Prison Board; (5) Christopher Young, a Columbia County Commissioner and member of the Columbia County Prison Board; (6) Richard Ridge, a Columbia County Commissioner and member of the Columbia County Prison Board; (7) David M. Kovach, a Columbia County Commissioner and member of the Columbia County Prison Board; (8) William Campbell, the Warden of the Columbia County Prison and a member of the Columbia County Prison Board; and (9) William Hampton, a lieutenant at the Columbia County Prison.

Swisher alleges that she was hired as a corrections officer at the Columbia County Prison in 2005 and that John Barker was hired as a corrections officer at the prison in January of 2007. According to Swisher, about a year after he was hired, Barker attacked her in an attempt to improperly embrace her and touch her in a sexual manner. Swisher alleges that, after that incident, Barker became more persistent and aggressive in attempting to lure her into a sexual relationship. Despite her objections, according to Swisher, Barker attempted to kiss her, to hug her, and to rub up against her; he placed his hands on her breasts and her buttocks;

2

and he attempted to touch her genitals. Swisher also alleges that Barker was seen exposing himself and masturbating at work. Swisher repeatedly refused Barker's assaults and harassment. She alleges that she tried to maintain a professional atmosphere and to ignore Barker's actions, hoping that he would stop. According to Swisher, because she feared retaliation by Barker's friends and some of his family members, who also worked at the prison, and because she feared losing her job, she did not report the incidents in 2008 and 2009.

Swisher alleges that the harassment continued in 2010: Barker would walk up behind her and fondle her breasts, buttocks, and genitals while rubbing his body and groin area against her. He also allegedly exposed his genitals to Swisher on numerous occasions. According to Swisher, on one particular occasion in early 2010, Barker entered the women's bathroom, forced open the door to a stall occupied by Swisher, opened his pants and exposed his genitals, grabbed the back of Swisher's head, and forced his genitals in her face trying to get her to perform oral sex on him. Swisher alleges that she yelled at Barker to stop and used what force she could to push him off of her, and Barker eventually stopped.

In May of 2010, another female corrections officer allegedly told Swisher that the defendants were aware of Barker's inappropriate behavior because they had received complaints from other female officers whom he had also sexually harassed. Swisher alleges that she later learned that Barker had repeatedly

3

assaulted and harassed other female corrections officers. Also in early May of 2010, Swisher was called in by her supervisors and questioned about whether Barker had harassed her or treated her inappropriately, and she advised her supervisors of the incidents, their frequency, and her concerns. At that time, Swisher learned that the defendants had started an investigation regarding Barker, but it was only after Swisher met with prison officials that Barker was suspended. After an investigation, Barker was fired during a Prison Board meeting in May of 2010. Swisher alleges that Barker was later charged with indecent assault, indecent exposure, and open lewdness, and he pleaded "no contest" to those charges.

According to Swisher, after Barker's suspension and termination, she became the target of retaliation by Barker's friends at the prison. She alleges that other officers would talk about her over their radios, they would not give her a break when she requested one, and when she called for backup, nobody would show up. On one occasion, when she radioed for assistance, the radio when silent as the other officers turned off their radios, intentionally ignoring her request for assistance. She also alleges that she was the subject of rumors including a false statement that she had once entered a classroom and sat on Barker's lap during roll call.

According to Swisher, the defendants were actually or constructively aware of the actions against her and the reasons for those actions, but they took no action to protect her. Swisher alleges that the defendants condoned the vicious rumors and attacks by other officers against her. She alleges that she became the focus and "scape goat" for Barker's termination, and other female officers who also had reported Barker's inappropriate behavior were not treated nearly as harshly or inappropriately as she was. Swisher alleges that she notified her supervisors of the increasingly egregious behavior of the other corrections officers: she alleges that on numerous occasions she informed Campbell and Hampton of the harassment and retaliation. Although Campbell allegedly said that he would address the matter by having meetings with the officers and telling them to refrain from such conduct, no such meetings ever took place, and no action was ever taken to protect Swisher. According to Swisher, the defendants protected other female corrections officers who had had been harassed by Barker, and evidence of that is the fact that some of those officers are still employed at the prison.

On June 23, 2010, things came to head when Swisher attempted to speak to her union representative, who turned his back on her and refused to acknowledge her attempts to speak with him. According to Swisher, crying and visibly upset, she went to Campbell's office and met with Campbell and Hampton. She alleges that Hampton said that, based on her concerns, he was concerned with her work

5

performance, and Hampton and Campbell told her that she would no longer be a corrections officers but that they would help her find another position with the County. Campbell allegedly told her to go home and "take a few days off." A few days later, Campbell called Swisher and told her that she was not to come back to work. According to Swisher, she was stunned, and when she asked why, Campbell told her that the Commissioners did not want her working for the prison. When she asked about help finding another position with the County, Campbell told her that the County did not want to employ her at all.

According to Swisher, she then took leave under the Family and Medical Leave Act (FMLA) pending a psychological evaluation, at the direction of the County and the prison, by the prison psychologist. In July of 2010, Swisher alleges, she met with the prison psychologist and discussed the incidents that occurred while she had been employed at the prison. According to Swisher, she continued on FMLA leave until February of 2011, when, in connection with an agreement settling a worker's compensation claim, she agreed to resign her position in exchange for back amounts owed on her claim for worker's compensation. She characterizes this as being constructively forced to enter her resignation.

According to Swisher, the defendants and their agents had knowledge of Barker's background and they knew or should have known of the probability that

6

he would engage in the sexually harassing conduct against coworkers at the Columbia County Prison. She alleges that Campbell informed her that Barker had been dismissed from at least two other positions for similar conduct—one in Pennsylvania and one in Florida. She also alleges that the defendants knew about the retaliation against her by supervisors and coworkers and they allowed that retaliation to continue pursuant to a custom of the prison and prison officials. According to Swisher, the defendants' actions show that it was their policy and custom to engage in retaliatory conduct toward those who speak out against other corrections officers.

Swisher alleges that, as a result of the defendants' actions, she suffered emotional distress and her health deteriorated. She also alleges that she was subject to scorn, ridicule, embarrassment, and the loss of her job, which resulted in the disregard of her colleagues, friends, neighbors, and some family members, and the loss of her reputation in the community. All of which, according to Swisher, led her into a state of indigence.

Swisher presents four counts in her amended complaint. Count One contains a Fourteenth Amendment equal protection claim and a First Amendment retaliation claim brought under 42 U.S.C. § 1983 against all the defendants. Count Two is a claim under the PHRA against Columbia County, the Columbia County Prison, Campbell, and Hampton. Count Three is a retaliation claim under the

7

PHRA against Columbia County, the Columbia County Prison, Campbell, and Hampton. And Count Four is a claim under § 1983, labeled as a *Monell* claim, against all the defendants.[1]

The defendants filed a motion to dismiss the amended complaint, which motion has been fully briefed and is addressed in this Report and Recommendation.

**III. Discussion.**

    **A. Motion to Dismiss and Pleading Standards.**

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to

---

[1] Although Swisher mentions Title VII in the jurisdiction and venue section of the amended complaint, the amended complaint does not contain any counts based on Title VII. Also, while Swisher mentions a claim of negligent infliction of emotional distress in her brief in opposition to the defendants' motion to dismiss, the amended complaint contains no such claim.

the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). With respect to the benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels,

9

conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler,* 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

10

*Iqbal,* 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal,* 556 U.S. at 675 & 679).

### B. The 42 U.S. C. § 1983 Claims Are Barred by the Statute of Limitations.

The defendants contend that Swisher's § 1983 claims are bared by the statute of limitations. The statute of limitations is an affirmative defense and the burden of establishing its applicability rests with the defendants. *Bradford-White Corp. v. Ernst & Whinney*, 872 F.2d 1153, 1161 (3d Cir. 1989). Nevertheless, a motion to dismiss may be granted on the basis of the statute of limitations if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Construction Corp.,*

11

570 F.2d 1168, 1174 (3d Cir. 1978)(motion to dismiss); 5A Wright & Miller, *Federal Practice and Procedure* §1368 (2d ed. 1990)("If the affirmative defense clearly is established in the pleadings, as, for example, when a statute of limitations defense is apparent on the face of the complaint and no question of fact exists, then a judgment on the pleadings may be appropriate.").

"A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims." *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). Pennsylvania, the applicable state in this case, mandates a two-year statute of limitations for personal injury claims. 42 Pa.C.S. § 5524(2). Thus, a § 1983 claim arising in Pennsylvania is subject to a two-year statute of limitations. *Fitzgerald v. Larson*, 769 F.2d 160, 162 (3d Cir. 1985).

Federal law governs when a cause of action accrues. *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). A § 1983 cause of action "'accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.'" *Id.* at 185-86 (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)). In other words, the cause of action accrues "when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 549 U.S. at 388 (citations omitted). On the other hand, "[s]tate law, unless inconsistent with federal law, . . . governs the

concomitant issue of whether a limitations period should be tolled." *Dique,* 603 F.3d at 185.

The defendants contend that Swisher's discrimination and retaliation claims accrued, at the latest, when her employment ended in June of 2010. In response, Swisher asserts that her employment did not end on June 23, 2010, when she was directed to leave the prison. It is not clear if Swisher is contending that her employment did not end until a few days later, when she was told not to return, or if she is contending that her employment did not end until February of 2011, when she officially resigned her position in connection with a settlement of her worker's compensation claim. Regardless, based on the facts alleged in the amended complaint, the § 1983 claims are barred by the statute of limitations.

The "proper focus" in determining when the cause of action accrued "is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Chardon v. Fernandez,* 454 U.S. 6, 8 (1981). As to Swisher's claims based on the harassment by Barker, those claims accrued at the latest in May of 2010, when Barker was fired, and thus, Swisher was no longer subject to his harassment. As to her claims of retaliation for reporting Barker's conduct, those claims accrued at the latest at the end of June of 2010, when Swisher was told not to return to work. *Id.* 454 U.S. at 8 ("There were no other allegations, either in [*Delaware State College v. Ricks,* 449 U.S. 250 (1980)] or in these cases,

13

of illegal acts subsequent to the date on which the decisions to terminate were made. As we noted in Ricks, '[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.'"). "The statute of limitations begins to run upon completion of an act of retaliation." *Farneski v. Cnty. of Hunterdon*, 916 F. Supp. 2d 573, 583 (D.N.J. 2013).

Swisher has not alleged any retaliatory acts after she was told not to come back to work. While she alleges that she was on FMLA leave until February of 2011, she does not allege that she was taken off of the FMLA in retaliation for reporting the harassment against her. Rather, she alleges that her FMLA ended then because she agreed to resign her position in exchange for back amounts owed on her claim for worker's compensation. Thus, based on the allegations of the amended complaint, we conclude that after the end of June of 2010, Swisher was no longer subject to any alleged retaliatory actions. This conclusion is consistent with Swisher's statement in response to the defendants' motion to dismiss that her "injuries were ongoing and were a result of the actions by the Defendant which occurred up to and through the Plaintiff's removal by her superiors on June 23, [2010]." *Doc. 21* at 3. In sum, Swisher's § 1983 claims accrued, at the latest, by the end of June of 2010, when she was removed from her job. Since she filed this

case more than two years after that date, on January 23, 2013, absent tolling, the § 1983 claims are barred by the statute of limitations.

The only basis for tolling the statute of limitations raised by Swisher is that the statute of limitations should be equitably tolled during the time that her complaint before the EEOC was pending. She contends that the defendants were aware that the facts of this case would lead to the filing of a complaint after exhaustion of administrative remedies. She argues that the § 1983 claims should not be considered time-barred when she filed suit within a reasonable time after the EEOC issued a right-to-sue letter. Swisher has not, however, presented any cases to support her argument that the statute of limitations as to § 1983 claims, which do not require the exhaustion of administrative remedies, should be tolled while administrative remedies are being pursued as to claims that do require administrative exhaustion.[2] And the courts have routinely rejected such an argument. *See e.g., Chatterjee v. Philadelphia Fed'n of Teachers*, 214 F. App'x 201, 206 (3d Cir. 2007)("[A]s the District Court noted in its opinion, [Chatterjee's] pursuit of administrative remedies for his Title VII claim did not operate to toll the limitations period for his §§ 1981, 1983, 1985(3), or state law claims."); *Stine v. Pennsylvania State Police*, 1:09-CV-944, 2012 WL 959362 at *5 (M.D. Pa. Mar.

---

[2] The one case that Swisher does cite—*Kellam v. Independence Charter Sch.*, 735 F. Supp. 2d 248, 251 (E.D. Pa. 2010)—is inapplicable as there were no § 1983 claims raised in that case.

21, 2012)("The applicable statute of limitations period for personal injury actions is two years (42 Pa.C.S. § 5524(7)), and the pendency of administrative proceedings does not toll it."); *Ke v. Ass'n of Pennsylvania State Coll. & Univ. Faculties*, 1:10-0448, 2011 WL 902418 at *6 (M.D. Pa. Mar. 1, 2011)(Report and Recommendation)("Although the plaintiff was required to exhaust his remedies through the EEOC prior to filing a federal lawsuit pursuant to Title VII, his pursuit of administrative remedies for his Title VII claims does not operate to toll the limitations period for his § 1983 or 1985 claims."), *adopting Report and Recommendation,* 2011 WL 902415 (M.D. Pa. Mar. 15, 2011); *Shine v. TD Bank Fin. Grp.*, CIV 09-4377, 2010 WL 2771773 at *10 (D.N.J. July 12, 2010)("[I]t appears that where a party has two independent claims based on similar or identical facts, and the underlying facts are presented to the EEOC via a timely complaint, a party cannot then invoke tolling to maintain the alternative claim that need not have been exhausted.  Simply put, a party under those circumstances has not unwittingly invoked the wrong forum, but instead has inexcusably sat on his rights.").  Swisher was not required to exhaust administrative remedies before bringing her § 1983 claims, and the statute of limitations was not tolled as to the § 1983 claims during the time that she was pursuing administrative remedies.  Thus, the § 1983 claims are barred by the statute of limitations.

**C. The Court Should Decline to Exercise Supplemental Jurisdiction Over the PHRA Claims.**

Given that the 42 U.S.C. § 1983 claims are barred by the statute of limitations and should be dismissed, the remaining claims are Swisher's PHRA claims over which this court has supplemental jurisdiction.

Whether to exercise supplemental jurisdiction is within the discretion of the court. 28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)(quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)(quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

There is nothing unique about this case such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction after the court disposes of the federal claims. Accordingly, we recommend that the court decline to exercise supplemental jurisdiction over the PHRA claims.

## IV. Recommendations.

Accordingly, for the foregoing reasons, it is recommended that the defendants' motion (doc. 18) to dismiss the amended complaint be granted, that the 42 U.S.C. § 1983 claims be dismissed because they are barred by the statute of limitations, and that the court decline to exercise supplemental jurisdiction over the PHRA claims.

> The Parties are further placed on notice that pursuant to Local Rule 72.3:
>
> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of November, 2013.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge